Francis A. Countway, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Arthur F. Bernhard, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

William P. Jackson and Grace M. Jackson, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 101499, 101500, 101501. Promulgated July 8, 1941.

*Alfred P. Lowell, Esq.*, for the petitioners.
*J. T. Haslan, Esq.*, for the respondent.

928

BLACK: The question in these proceedings is the determination of the proper basis for computation of capital gain on the sale during the taxable year involved of the N. V. Unilever preference shares which petitioners acquired in 1930 in the manner set out in our findings. The applicable statute in the case of petitioner Countway is the Revenue Act of 1932; and in the case of the other two petitioners, the applicable statute is the Revenue Act of 1934. Section 113 of the Revenue Act of 1932 provides in part as follows:

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\*      \*      \*      \*      \*      \*      \*

(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. \* \* \*

Section 113 (a) (2) of the Revenue Act of 1934 is the same as the above quoted portion of the 1932 Act, except that the last quoted period is changed to a comma and is followed by the words "except that for the purpose of determining loss the basis shall be the basis so determined or the fair market value of the property at the time of the gift, whichever is lower."

Petitioners primarily contend that they acquired the N. V. Unilever preference shares on April 21, 1930, as a gift, and that their basis must therefore be determined under paragraph (2) of subsection (a) of section 113, *supra*. As an alternative, they contend that if it be held that the shares were not acquired as a gift, then it must be held that they were acquired in exchange for the partnership certificates; that the "cost" of the shares must be regarded as the fair market value of the partnership certificates at the time of the exchange on April 21, 1930, which value petitioners contend was equal to the value of the shares; and that petitioners are not estopped to use the "cost" thus contended for as their basis for determining capital gain or loss.

The respondent contends that petitioners did not respectively acquire the N. V. Unilever preference shares as a gift; that they acquired such shares in exchange for their partnership certificates; that these partnership certificates had been acquired by petitioners by virtue of their employment and were intended under the trust deed and scheme as a means of measuring additional compensation for faithful and loyal services performed; that, since the annual or periodical income received by petitioners on such partnership certificates had been considered by petitioners as income in the year received and had been

so reported, the fair market value of the N. V. Unilever preference shares received by petitioners in 1930 was the equivalent of the then value of the aggregate of the anticipated future compensation receivable under such partnership certificates and should have been reported as taxable income in 1930, which petitioners did not do; and that, since petitioners did not report the receipt of the shares in 1930 or any taxable income therefrom, and the statute of limitations within which any deficiency might be assessed for 1930 has expired, the petitioners are estopped from claiming the fair market value of such shares on April 21, 1930, as their basis for computing gain or loss in the taxable years, respectively, and should be limited to a basis of cost, which was zero.

Were the transfers of the N. V. Unilever preference shares to petitioners on April 21, 1930, gifts of such shares to petitioners, or were the transfers made in consideration for and in exchange for the partnership certificates then owned by petitioners?

We are satisfied that the transfers of the N. V. Unilever preference shares to petitioners were not gifts but represented property received in exchange for the so-called partnership certificates, and that the fair market value of such shares when received by petitioners on April 21, 1930, was taxable income to them, since the exchange was a taxable one and not excepted from the recognition of gain or loss by section 112 of the Revenue Act of 1928 and the partnership certificates had a basis of zero for computation of gain or loss at all times. In *Noel* v. *Parrott*, 15 Fed. (2d) 669, the Fourth Circuit, among other things, said: "It is an essential characteristic of a gift, however, that it be a transfer without consideration. If there is a consideration for the transaction, it is not a gift. 28 C. J. 621."

Petitioners devote the greater part of their brief on the question of gift in support of the contention that there was no consideration for the transfers. They point to the provision of clause 7 of the trust deed wherein it was agreed between Lever Brothers Ltd., the first Lord Leverhulme, and the trustees that the partnership certificate holders would be entitled to participate "in the distribution of dividends as provided by the Articles of Association of the Company for the time being" and argue that in view of the phrase "for the time being" it was within the legal rights of Lever Brothers Ltd. to change its articles of association at any time so as to cut off all future benefits theretofore enjoyed by the holders of the partnership certificates, and that Lever Brothers Ltd. could do this without first securing the consent of not less than three-fourths of the total nominal amount of the outstanding partnership certificates, as provided by clause 13 of the trust deed. They further argue that such a change in the articles of association actually occurred when the second Lord Leverhulme

and the executors of the will of the first Lord Leverhulme agreed to exchange the ordinary shares of Lever Brothers Ltd. for shares of Unilever Ltd.; that the stockholders of Lever Brothers Ltd. were under no legal obligation to transfer anything to petitioners; and that the transfer to petitioners of the N. V. Unilever preference shares was a pure gratuity.

Although petitioners argue this point in their brief persuasively, we are not convinced by such argument. After a careful consideration of all the facts, we have come to the conclusion that petitioners received the N. V. Unilever preference shares of stock in exchange for their so-called partnership certificates, together with the dividend rights which these certificates carried.

On January 1, 1930, the second Lord Leverhulme and the executors caused an offer to be made to petitioners and others which was accepted by each of the petitioners. This offer was, in part, as follows:

In accordance with such valuation, Lord Leverhulme and the Executors are pleased now to be in a position to offer you the under-mentioned number of 7 per cent. Cumulative Preference Shares of 12 Florins each, fully paid, in N. V. Margarine Unie (or N. V. Unilever, as will be the name of the Company very shortly), and cash in lieu of a fraction of a share, in exchange for your Partnership interest which will be cancelled; * * *. You will, in addition, be entitled to the Co-Partnership dividend of 5 per cent. which is expected to be paid for the year 1929.

\*        \*        \*        \*        \*        \*        \*

The Trustees of the Co-Partnership Trust consider that the above offer is a very favourable one to you, and they unhesitatingly recommend you to accept it by signing the form attached below and returning it in the enclosed envelope to your Company not later than seven days after receipt hereof by you.

The form of the acceptance was as follows:

I accept the offer contained in your circular of the 1st January, 1930, and I agree that on issue of the shares in N. V. Margarine Unie (N. V. Unilever) to which I am entitled under that offer, my rights to Co-Partnership dividends, whether under Partnership Certificates or Bonuses on 8 per cent. Preferred Ordinary Shares in Lever Brothers Limited, shall cease.

We, therefore, think the surrender by petitioners of their partnership certificates in exchange for the N. V. Unilever preference shares was a good and valid consideration for such shares, and that, since there was a consideration for the transaction, it can not be said that petitioners acquired the N. V. Unilever shares as gifts. *Noel* v. *Parrott, supra*. We hold, therefore, that petitioners' bases may not be determined under paragraph (2) of subsection (a) of section 113, *supra*.

Since not any of the exceptions to subsection (a) of section 113, *supra*, are applicable, it follows that the basis of each petitioner is

"cost" of the N. V. Unilever preference shares at the time of their acquisition. What was this cost? Where stock is received in exchange for properties, the cost of the stock is the value of the properties exchanged therefor, unless the transferor is required, under the statute, to retain as the cost of the stock the cost of the properties transferred. See Paul and Mertens, Law of Federal Income Taxation, sec. 18.18.

We have already pointed out that the exchange which took place in 1930 was not one excepted from the recognition of gain or loss under section 112 of the Revenue Act of 1928. Therefore, the cost to petitioners of the stock which they acquired in 1930 was the value of the property which they gave up in exchange for it. If we had no evidence as to what the value of the property given in exchange was, then the presumption would be that it had a value equal to the fair market value of the shares of stock which were received in exchange for it. *Ambassador Petroleum Co.*, 28 B. T. A. 868; reversed on another point, 81 Fed. (2d) 474; *Holmby Corporation*, 28 B. T. A. 1092; affd., 83 Fed. (2d) 548, and cases there cited.

But the rule cited in the foregoing cases does not apply in the instant case because we do have evidence as to the value of the property which petitioners gave in exchange for the shares of stock which they received. It has been stipulated that the partnership certificates "had neither capital value nor market value at any time." In view of this stipulation, we think we must hold that the N. V. Unilever preference shares of stock which petitioners received in 1930 had no cost basis to them.

The situation would, of course, be different if they had taken the fair market value of the stock into income in 1930 and had paid tax thereon. In that event, the cost basis of their stock in the years when they sold it would have been the fair market value of the stock which they took into income in 1930. But the facts show that petitioners did not take the fair market value of the stock into income in 1930 and pay tax thereon nor did the property which they gave in exchange for it have either capital value or fair market value. Under these circumstances we think petitioners have failed to prove that the shares of stock which they sold in the respective taxable years had any cost basis to them. Cf. *Commissioner* v. *Farren*, 82 Fed. (2d) 141; certiorari granted and subsequently dismissed by stipulation of counsel, 299 U. S. 617; *Alamo National Bank* v. *Commissioner*, 95 Fed. (2d) 622; certiorari denied, 304 U. S. 577, affirming 36 B. T. A. 402.

Because of the foregoing reasons and under the authorities cited, we sustain the Commissioner in his determination that the shares of stock in question had no cost basis to petitioners.

*Decision will be entered for the respondent.*